```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
```

BRENDA L. WISE,                )
   Plaintiff.                 )
                                  )
          v.                 )   C.A. No. 09-10706-MLW
                                  )
MICHAEL J. ASTRUE,             )
COMMISSIONER OF SOCIAL         )
SECURITY ADMINISTRATION,       )
   Defendant.                 )

<u>MEMORANDUM AND ORDER</u>

WOLF, D.J.                                      August 24, 2011

I. INTRODUCTION

    Plaintiff Brenda L. Wise has filed a motion pursuant to 42 U.S.C. §1383(c)(3) to reverse or remand the final decision of defendant Michael J. Astrue, the Commissioner of the Social Security Administration, denying her application for Supplemental Security Income ("SSI"). Defendant has filed a motion to affirm the decision. For the reasons described below, plaintiff's motion to reverse or remand is being denied, and defendant's motion to affirm the decision is being allowed.

II. FACTS AND PROCEDURAL HISTORY

    Plaintiff filed an application for SSI on May 9, 2005. <u>See</u> Administrative Record ("AR") at 19. She alleges a disability arising from a host of physical and mental health conditions, including degeneration of the cervical spine, depression, anxiety disorder, and body dysmorphic disorder. <u>See</u> <u>id.</u> at 21-22. Defendant denied plaintiff's application on August 20, 2005, and, after reconsideration, again on January 30, 2006. <u>See</u> <u>id.</u> at 19.

An administrative hearing was held before Administrative Law Judge ("ALJ") Barry H. Best on July 30, 2007. See id. On September 18, 2007, the ALJ denied plaintiff's application, finding that she did not meet the requirements of the five-step sequential evaluation process for determining whether an individual is disabled and, therefore, was not disabled. See id. at 20-28. The sequential evaluation was performed pursuant to 20 C.F.R. §416.920. Steps one through five address whether: (1) the claimant is engaging in substantial gainful activity; (2) the claimant has a medically determinable impairment that is severe or a combination of impairments that is severe; (3) the claimant's impairment or combination of impairments meets or medically equals the criteria listed in 20 C.F.R. §404 Subpart P, Appendix 1; (4) the claimant's residual functional capacity allows him to perform the requirements of his past relevant work; and (5) the claimant is able to perform any other work. See id. at 20-21.

The ALJ found that plaintiff satisfied steps one and two because she was not engaged in substantial gainful activity and suffered from four severe impairments - namely cervical degenerative disc disease, depression, anxiety disorder, and body dysmorphic disorder. See id. at 21. At step three, the ALJ determined that these impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. §404, Subpart P, Appendix 1, and, therefore, did not automatically render plaintiff

2

disabled. See id. at 21-22. At steps four and five, the ALJ found that plaintiff had no past relevant work but that, considering plaintiff's age, education, work experience, and residual functional capacity, she was capable of performing jobs that exist in significant numbers in the national economy. See id. at 26-27. Accordingly, plaintiff was determined to be not disabled. See id. at 27-28.

The ALJ's decision became final when plaintiff's request for review was denied by the Appeals Council on March 9, 2009. See id. at 6. Plaintiff timely filed the instant petition on May 1, 2009, contending that the ALJ erred at step five by failing to give proper weight to the opinions of her treating primary care physician and mental health examiner. On January 21, 2011, defendant filed a motion to affirm the ALJ's decision.

III. ANALYSIS

"Judicial review of Social Security administrative decisions is authorized by 42 U.S.C. §405(g)." Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); see also 42 U.S.C. §1383(c)(3) (providing that judicial review of SSI decisions is governed by the standards applicable to judicial review of Disability Insurance Benefits decisions pursuant to 42 U.S.C. §405(g)). The court's review is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (citing Manso-

Pizarro v. Sec'y of Health & Humam Servs., 76 F.3d 15, 16 (1st Cir. 1996)).

A reviewing court must affirm the ALJ's decision if it is supported by "substantial evidence" in the record. 42 U.S.C. §405(g); see also Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The ALJ is entitled to weigh the evidence and to resolve conflicts in the medical evidence and testimony. See Rodriguez Pagan, 819 F.2d at 3. The ALJ may also consider questions of demeanor and credibility, and his or her conclusions regarding demeanor and credibility are entitled to deference by a reviewing court. See Crespo v. Sec'y of Health & Human Servs., 831 F.2d 1, 7 (1st Cir. 1987).

A. The Opinion of Plaintiff's Primary Care Physician

Plaintiff contends that the ALJ erred by not giving controlling weight to the opinion of plaintiff's treating primary care physician regarding plaintiff's residual functional capacity. This contention is mistaken.

An ALJ must evaluate every medical opinion he or she receives, "[r]egardless of its source," unless a treating physician's opinion is given controlling weight. 20 C.F.R. §416.927(d). "[T]reating

4

physicians' opinions are ordinarily accorded deference in Social Security disability proceedings." Richards v. Hewlett-Packard Corp., 592 F.3d 232, 240 n.9 (1st Cir. 2010). This is because treating physicians are best situated to offer "a detailed, longitudinal picture . . . and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §416.927(d)(2). However, for a treating physician's opinion to be given controlling weight, it must be well-supported by medically acceptable clinical and laboratory diagnostic techniques and must be consistent with other substantial evidence in the record. See 20 C.F.R. §416.927(d)(2); Silva-Valentin v. Comm'r of Soc. Sec., 74 F. App'x 73, 74 (1st Cir. 2003) (unpublished); Haidas v. Astrue, C.A. No. 08-11274-MLW, 2010 WL 1408618, at *2 (D. Mass. Mar. 31, 2010).

In this case, the ALJ declined to give controlling weight to the opinion of plaintiff's treating primary care physician, Dr. Yoon Choi. See AR at 26. Essentially, the ALJ found that Dr. Choi's opinion was inconsistent with other evidence and, indeed, was controverted by plaintiff's description of her daily activities and by the opinion of plaintiff's treating neurosurgeon, Dr. Jean-Valery Coumans. See id. at 24-26.

In October 13, 2006, Dr. Choi completed a pain questionnaire

on plaintiff's behalf, characterizing plaintiff's pain as totally disabling and indicating that plaintiff's pain was of such severity "as to preclude sustained concentration and productivity which would be needed for full-time employment on an ongoing sustained basis." Id. at 346. On a separate medical questionnaire completed the same day, Dr. Choi indicated that plaintiff's impairment significantly limited her "physical ability to do basic work activities, i.e., walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling" and concluded that plaintiff "cannot sustain competitive employment on a full-time, ongoing basis." Id. at 347-48. On a follow-up questionnaire completed on July 23, 2007, Dr. Choi reiterated the same conclusion, adding that, on average, plaintiff could be expected to be absent from work three days per month. See id. at 428.

However, the ALJ interpreted this conclusion as inconsistent with the results of a physical capacity evaluation performed by Dr. Choi on the same day. See id. at 26. The results of that evaluation indicate that, in an eight-hour workday, plaintiff was able to sit, stand, and walk for four hours, and that plaintiff was able to bend and crawl occasionally and squat or kneel frequently. See id. at 345. The results also indicate that plaintiff could perform simple grasping and fine manipulating, could operate controls with her legs and feet, and could lift and carry up to ten pounds occasionally. See id. A reasonable person could construe the

6

results of the physical capacity evaluation as the ALJ did.

The ALJ also noted that Dr. Choi's conclusion is inconsistent with plaintiff's description of her daily activities. See id. at 26. During the July 30, 2007 hearing, plaintiff stated that she is capable of driving, cares for her eight-year-old son, and performs a variety of household chores including cooking and some laundry. See id. at 469-72.

Finally, the ALJ noted that Dr. Choi's conclusion is controverted by the opinion of plaintiff's treating neurosurgeon, Dr. Coumans. See id. at 25-26. On August 3, 2005, reporting on plaintiff's progress following a June 28, 2005 operation, Dr. Coumans described an improvement in plaintiff's preoperative symptoms and observed that "[h]er motor examination demonstrates good range of motion of the cervical spine." Id. at 236. On March 2, 2006, while reporting that plaintiff "continues to have headaches [and] pain over the posterior aspect of the neck [and] intermittent muscle spasms and shoulder pain bilaterally," Dr. Coumans stated that plaintiff's "examination demonstrates 5 out of 5 function over all major muscle groups of the upper extremities with good coordination" and that "[h]er cervical range of motion is good." Id. at 400.

In essence, the record contains evidence pointing in different directions, and, accordingly, it was not error for the ALJ to decline to give controlling weight to Dr. Choi's opinion, which the

ALJ described as "based on the claimant's subjective complaints of pain alone, without any positive physical examination findings . . . ." Id. at 26. Plaintiff's contrary contention "fails because the treating physician's opinion is inconsistent with the bulk of the medical evidence and is not supported by any progress notes or clinical or laboratory findings." Ramos v. Barnhart, 119 F. App'x 295, 296 (1st Cir. 2005) (unpublished); see also Shields v. Astrue, C.A. No. 10-10234-JGD, 2011 WL 1233105, at *7 (D. Mass. Mar. 30, 2011). Moreover, the ALJ was not bound to credit plaintiff's subjective complaints of disabling pain in the face of contrary medical evidence. See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987) ("[T]he ALJ's rejection of the degree of claimant's pain was, on this record, bolstered by objective clinical tests and findings, and therefore, supportable.").

When, as here, a treating physician's opinion is not controlling, an ALJ must look to the following factors to determine the weight properly given to the opinion: (1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the relevant evidence in support of the medical opinion; 4) the consistency of the medical opinions reflected in the record as a whole; and 5) whether the physician is a specialist in the area in which he or she renders his or her opinions. See 20 C.F.R. §416.927(d).

8

However, the First Circuit has implicitly held that it is not necessary for an ALJ to expressly address each of these factors. See Morales v. Comm'r of Soc. Sec., 2 F. App'x 34, 36 (1st Cir. 2001) (unpublished); Ramos, 119 F. App'x at 296; see also Haidas, 2010 WL 1408618, at *3; Dietz v. Astrue, C.A. No. 08-30123-KPN, 2009 WL 1532348, at *7 (D. Mass. May 29, 2009). Moreover, "[t]he law in [the First Circuit] does not require ALJs to give greater weight to the opinions of treating physicians" than to the opinions of non-treating physicians. Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991); Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 13 (1st Cir. 1982). An ALJ is entitled to choose between conflicting evidence. See Vazquez-Rosario v. Barnhart, 149 F. App'x 8, 10 (1st Cir. 2005) (unpublished); Evangelista, 826 F.2d at 141; Burgos Lopez v. Sec'y of Health & Human Servs., 747 F.2d 37, 41 (1st Cir. 1984).

In this case, the ALJ gave less weight to Dr. Choi's opinion than to the opinions of two state agency consultants, Dr. Phyllis Sandell and Dr. Janet Leaver, notwithstanding the fact that neither consultant examined or treated plaintiff. This was not error. As explained earlier, "[t]he law in this circuit does not require ALJs to give greater weight to the opinions of treating physicians." Arroyo, 932 F.2d at 89. The report of a non-examining, non-treating physician "is entitled to some evidentiary weight," the degree of which varies with the circumstances. Gordils v. Sec'y of Health &

9

Human Servs., 921 F.2d 327, 328 (1st Cir. 1990). "The ALJ may downplay the weight afforded a treating physician's assessment of the nature and severity of an impairment where . . . it is internally inconsistent or inconsistent with other evidence in the record including treatment notes and evaluations by examining and nonexamining physicians." Shields, 2011 WL 1233105, at *7 (internal quotation marks omitted). "The ALJ may reject the opinion of the treating physician so long as an explanation is provided and the contrary finding is supported by substantial evidence." Id.

On November 4, 2005, having reviewed plaintiff's medical records, Dr. Sandell completed a physical residual functional capacity assessment of plaintiff, concluding that plaintiff could occasionally lift/carry twenty pounds, could frequently lift/carry ten pounds, and could stand, walk, or sit for six hours in the course of an eight-hour workday. See AR at 321. Dr. Sandell also concluded that plaintiff's gross and fine manipulation skills were unlimited, and that plaintiff's postural limitations included only occasional difficulties with climbing, balancing, stooping, kneeling, crouching, and crawling. See id. at 322-23. On January 31, 2006, Dr. Leaver concurred with Dr. Sandell's conclusions, adding that "[t]he implication is that claimant is doing well and is expected to continue to improve." Id. at 342. Both Dr. Sandell and Dr. Leaver expressly referenced Dr. Couman's reports. See id. at 321, 343. In addition, the opinions of both Dr. Sandell and Dr.

10

Leaver are largely consistent with the results of the October 13, 2006 physical capacity evaluation performed by Dr. Choi, if not with Dr. Choi's ultimate conclusions.

In these circumstances, having noted the inconsistencies between Dr. Choi's opinion and other substantial evidence in the record, it was not error for the ALJ to give more weight to the opinions of Dr. Sandell and Dr. Leaver than to the opinion of Dr. Choi. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 276 (1st Cir. 1988) ("A treating physician's conclusions regarding total disability may be rejected by the Secretary especially when, as here, contradictory medical advisor evidence appears in the record."); Shields, 2011 WL 1233105, at *8 ("Because the ALJ supported his rejection of the treating physician's opinions with express references to specific inconsistencies between the opinions and the record, the ALJ's decision not to grant [the treating physician's] opinions significant probative weight was not improper.").

B.   The Opinion of Plaintiff's Mental Health Examiner

Plaintiff also contends that the ALJ erred by not giving proper weight to the opinion of her mental health examiner, Dr. James Sullivan. This contention, too, is mistaken.[1]

---

[1] Plaintiff also contends that the ALJ erred in dismissing the opinion of another mental health examiner, Dr. Dennis Reichardt. However, Dr. Reichardt's examination of plaintiff was not conducted until March 26, 2008 - nearly eight months after plaintiff's July 30, 2007 administrative hearing and nearly six

11

Dr. Sullivan examined plaintiff on October 29, 2005 and diagnosed her with Major Depressive Disorder, Generalized Anxiety Disorder, and Body Dysmorphic Disorder. See AR at 316. Dr. Sullivan gave plaintiff a Global Assessment of Functioning ("GAF") score of 48,[2] and noted that plaintiff's disorders "directly impact" her "inability to interact in an appropriate fashion with others and maintain the functions and responsibilities associated with full-time employment." Id. A mental residual functional capacity assessment completed by Dr. Sullivan described mostly "moderately severe" work-related limitations, except for "mild" limitations in the performance of simple tasks. See id. at 318-19.

However, Dr. Sullivan only examined plaintiff on one occasion and never treated her. See id. at 26 n.6. The ALJ found that the consultation was arranged by plaintiff's attorney and "the purpose of the examination was limited to production of evidence that might

---

months after the ALJ's September 18, 2007 decision. See AR at 452. Accordingly, the ALJ did not have an opportunity to consider Dr. Reichardt's report and, therefore, this court may not consider it in determining whether the ALJ's decision was supported by substantial evidence.

[2] "The GAF scale is used to report a clinician's judgment of an individual's overall level of psychological, social, and occupational functioning and refers to the level of functioning at the time of evaluation." Bernier v. Astrue, C.A. No. 09-12167-DJC, 2011 WL 1832516, at *3 n.4 (D. Mass. May 13, 2011). GAF scores can range from 0 - 100. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., 2000) ("DSM-IV"). A score between 41 - 50 reflects "[s]erious symptoms" or "any serious impairment in social, occupational, or school functioning." Id. 34.

be useful in claimant's disability claim." Id. Therefore, the ALJ gave little weight to Dr. Sullivan's opinion, explaining that, because "diagnosis and assessment of actual and potential functioning is of necessity based on the claimant's subjective statements, the potential for exaggeration on the part of the claimant or patient accommodation and/or bias on the part of the examiner are obvious." Id. The ALJ also noted that Dr. Sullivan's opinion was inconsistent with plaintiff's treatment records from the South Bay Mental Health Center ("SBMHC"), where plaintiff received mental health treatment from April, 2003, until August, 2005. See id. at 25. Those records reflect GAF scores ranging between 65 and 70,[3] and largely describe plaintiff's symptoms as mild. See id. at 289-312.

Accordingly, because Dr. Sullivan's opinion was inconsistent with other evidence in the record - and, particularly, evidence from the SBMHC, where plaintiff had been receiving treatment for two years - it was not error for the ALJ to give little weight to Dr. Sullivan's opinion. As described earlier, "[i]t is the ALJ's prerogative to resolve conflicting evidence," Vazquez-Rosario v. Barnhart, 149 F. App'x 8, 10 (1st Cir. 2005) (unpublished), and it was not error to do so here.

---

[3] A GAF score between 61 and 70 reflects "[s]ome mild symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV 34.

C. <u>Hypothetical Questions to the Vocational Expert</u>

Finally, plaintiff contends that the ALJ erred by not confining the hypothetical questions posed to the vocational expert who testified at the July 30, 2007 administrative hearing to the scope of limitations described by Dr. Choi and Dr. Sullivan. This contention is mistaken because, having decided to give little weight to the opinions of Dr. Choi and Dr. Sullivan, the ALJ was not required to tailor his hypothetical questions to those opinions. A hypothetical is appropriate if the question accurately reflects the objective medical findings in the record. See <u>Perez v. Sec'y of Health and Human Servs.</u>, 958 F.2d 445, 447 (1st Cir. 1991). The ALJ reasonably found that the medical findings did not justify the hypothetical plaintiff now asserts was required in this case.

IV. ORDER

As the ALJ's decision was carefully explained and was supported by substantial evidence in the record, it is hereby ORDERED that:

1. Plaintiff's Motion for an Order Reversing or Remanding the Decision of the Commissioner (Docket No. 10) is DENIED.

2. Defendant's Motion for Order Affirming the Decision of the Commissioner (Docket No. 20) is ALLOWED.

                                                  /s/ Mark L. Wolf
                                       UNITED STATES DISTRICT JUDGE